UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.M. DOE, by Next Friend
K.M. DOE,                                             Case No. 2023-
                                                      Hon.
      Plaintiffs,

v.

RILEY DEFENDANT,

      Defendant.
_____/
SEIKALY & ZEMAN, P.C.
WILLIAM R. SEIKALY (P33165)
Attorney for Plaintiffs
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
(248) 785-0102
wrs@sslawpc.com
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COME Plaintiffs, A.M. DOE, by Next Friend K.M. DOE, by and through their attorneys, SEIKALY & ZEMAN, P.C., and for their Complaint against Defendant state as follows:

## PARTIES

1. Plaintiff K.M. DOE is a resident of the City of New Baltimore, Macomb County, Michigan. She brings this action as Next Friend of her daughter, A.M. DOE.

2. Plaintiff, A.M. DOE is a minor child and resident of the City of New

Baltimore, Macomb County, Michigan.

3. Upon information and belief, Defendant RILEY SHEA is, and has been at all times relevant, a resident of Harrison Township, Macomb County, Michigan.

4. At all times relevant to this action, Defendant was an employee of EduStaff, providing services to the Anchor Bay School District (hereinafter "ABSD").

5. At all times relevant to this action, the ABSD was an educational institution and recipient of Federal funds and financial assistance and therefore subject to Title IX requirements.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1333. The Court has supplemental jurisdiction of Plaintiffs' State law claims under 28 U.S.C. §1367(a).

7. The amount in controversy exceeds Seventy-Five Thousand and no/100 ($75,000) Dollars, exclusive of costs, interest and attorney's fees.

8. Venue is proper in this Court under 28 U.S.C. §1391(b) because the causes of action arose entirely within this District, as Defendant resides in this District and/or transacted his business within this District, and because the incident giving rise to this action occurred in this District.

## COMMON ALLEGATIONS

9. Plaintiffs reincorporate each and every preceding paragraph as though

more fully restated herein.

10. This is an action for violation of civil rights under the laws of the United States.

11. During all relevant times, Defendant acted under the color of State law.

12. At all times relevant to this cause of action, Plaintiff A.M. DOE was a student under the direct and exclusive control of Defendant, specifically while a member of the School's swim team.

13. At all times relevant to this cause of action, Defendant was an employee of EduStaff and an apparent and defacto agent-employee of the ABSD.

14. At all times relevant to this cause of action, Defendant was the girls swim team coach at the ABSD, with exclusive control of the girls on the team and no other adult or direct supervision on site.

15. By nature of his position as a swim coach, Defendant was given unprecedented access and control over female students at the ABSD without direct supervision, monitoring, or control by the ABSD or EduStaff. A.M. DOE's parents entrusted the control of Plaintiff to Defendant.

16. At the beginning of A.M. DOE's participation in the ABSD, Defendant began to provide extra attention to Plaintiff. Defendant began to "groom" her in preparation for making sexual advances to Plaintiff.

17. At a time beginning no later than July of 2022, Defendant began sending

text messages to A.M. DOE expressing his attraction and connection to her as part of the grooming process.

18. Defendant started a group chat for the girls swim team to mask his intentions and then proceeded to isolate A.M. DOE from the group chat and started to contact her directly. This is a calculated act by Defendant and is commonly used when sexual predators want to break down and nullify a target's natural safeguards, i.e., Plaintiff, A.M. DOE.

19. At a time beginning no later than July of 2022, Defendant told A.M. DOE that he had a crush on her and would get jealous when she did not talk to him.

20. At a time beginning no later than July of 2022, Defendant's interactions with A.M. DOE at swim practice made her uncomfortable and confused.

21. During the time when Defendant should have been coaching the girls swim team during practice, he would instead take naps on the bleachers until practice was over, explaining to A.M. DOE that this was caused by his feelings for her, which included jealousy and an inability to focus when he was near her.

22. On August 20, 2022, Defendant sent messages to A.M. DOE admitting he had felt he was manipulating her.

23. On October 5, 2022, Defendant sent a message to A.M. DOE at 1:30 a.m., confessing his feelings of love for her.

24. During these messages, Defendant confessed his romantic and one-sided

crush on her and how he would get jealous when A.M. DOE talked to other males, both students and coaches alike.

25. Defendant's activity included an effort to have physical contact with A.M. DOE, which included touching and rubbing her leg underneath a table and unnecessary, inappropriate contact with her while in the swimming pool.

26. Around October 30, 2022, Defendant also sent a request to change the owner of the girls swim team group (TeamSnap) from himself to A.M. DOE, causing more undue stress to Plaintiff.

27. Defendant originally professed that his messages were innocent and wholly appropriate. In reality, Defendant recognized he was caught in the act of grooming and was trying to spin his actions in a positive light.

28. Unwanted contact by Defendant with A.M. DOE began to make the school year exceedingly difficult for Plaintiff. These difficulties caused enough concern to alert her parents and caused them to file a Title IX Formal Complaint on October 21, 2022.

29. On October 21, 2022, A.M. DOE and her parents met with the Human Resource Director and filed the Title IX Formal Complaint. Notice letters were sent to the Complainant and Respondent notifying them that the District was going to conduct an investigation.

30. Following the Title IX Formal Complaint, the ABSD instructed

Defendant not to have any contact with A.M. DOE, which Defendant ignored. Defendant continued to message and contact A.M. DOE and her family through August of 2023.

31. By his own admission to the ABSD, Defendant ignored the instruction and continued to have contact with A.M. DOE and her family in a manner that was both sexually harassing and outrageous, given the facts and circumstances.

32. On October 24, 2022, the Title IX Investigator contacted Plaintiff, K.M. DOE to schedule an interview.

33. On October 25, 2022, the Director of the Great Lakes Swim Club was interviewed over the telephone.

34. On October 30, 2022, Defendant attempted to transfer ownership of the girls swim team group (TeamSnap) to A.M. DOE.

35. On October 31, 2022, Defendant sent the following message to A.M. DOE:

> "I hope you know, I think you/whoever did the right thing. I don't blame you for a moment, and I was a horrible coach to put this garbage on your plate and am sorry. I know I let you down in an unimaginable way and have not forgiven myself for the confusion I have caused you. I knew better, and let my own personal issues get the best of me. I have an explanation, not an excuse. Whenever the school finally asks to talk to me, I will tell them everything. I will not ever be back, don't worry. You are free of this mess I created. You have a bright future, and you're going to do awesome at whatever you choose."

36. On November 2, 2022, the Title IX investigator interviewed A.M. DOE

6

in-person with counsel present.

37. During an interview with the Title IX Investigator on November 9, 2022, Mireille Murillo, a former student and swim team member for the ABSD, stated that she had met with Defendant for dinner. Defendant decided to drink too much alcohol and confessed he had feelings for A.M. DOE. He unconvincingly assured Murillo that his feelings were not sexual, that he cared for A.M. DOE, and that "is not okay."

38. On November 10, 2022, the Title IX investigator interviewed Defendant via Zoom. Defendant's attorney was present at that time, and the District's counsel was also present for that interview.

39. Defendant confirmed that he did contact A.M. DOE after the ABSD administrators directed him not to contact anyone from the girls swim team, including her friends and family. He did this through social media, specifically Instagram.

40. When asked by the Title IX Investigator about his behavior, Defendant did not comment, invoked his Fifth Amendment rights, and did not attempt to explain himself or his actions.

41. Between November 15, 2022 and November 25, 2022, evidence was submitted for the Title IX report. The parties would have ten days to review and respond to the evidence. The evidence included letters of notice, a response from Plaintiffs' counsel, an additional response to the Investigator, and a response from Defendant's counsel.

42. On each occasion that Defendant was instructed not to have contact with A.M. DOE, he would ignore that instruction and reach out to her on a different social media platform. First, it was text, then TeamSnap, then Instagram, then Words with Friends. This behavior shows that Defendant had no desire to stop harassing A.M. DOE.

43. On December 14, 2022, the Title IX investigator submitted an investigation for determination to Todd Rathburn, the Title IX decision maker.

44. On January 16, 2023, the Title IX decision maker, Todd Rathburn, determined that:

> . . . "Respondent's behavior cannot be considered severe enough to satisfy the requirement under Title IX. . . . However, Respondent's behavior was unprofessional, crossed ethical boundaries for coaches and student athletes and the investigative report suggests that respondent defied directives to not contact any student athletes or parents of the swim team members and in doing so via text message was not insubordinate. Respondent is no longer employed by Anchor Bay School District for the reasons stated herein."

45. On January 22, 2023, Plaintiffs submitted an appeal on the grounds that new evidence had become known and that a procedural irregularity had occurred.

46. On February 14, 2023, the appeal was granted in part and sent back to Todd Rathburn, the Title IX decision maker, for a final decision.

47. On March 10, 2023, the ABSD found that A.M. DOE's rights were violated. The ABSD found that Defendant had created a hostile environment, the District determined that a preponderance of the evidence establishes that:

8

Respondent's has violated Anchor Bay School District Section 8003.3-AR and Title IX.

48. The "unwelcomed conduct" requirement of "hostile environment sexual harassment is a subjective standard and the filing of a formal complaint of sexual harassment suffices to meet the "unwelcomed" element of the prong. See 85 Fed. Reg. at 30148. Clearly, the Complainant found the Respondent's conduct to be unwelcome as evidenced by the filing of the complaint.

49. The fact finder went on to determine that "the second step in the analysis is to determine if the conduct is severe, pervasive and objectively offensive utilizing the reasonable person standard. The reasonable person standard requires the Decision Maker to place themselves in the context in which the conduct occurred to determine if a reasonable person in that Complainant's position would have found the conduct to be severe, pervasive and objectively offensive."

50. The fact finder went on to determine that the harassment was pervasive, stating: "Based on the facts presented herein as well as those from the original investigation I find that the conduct was pervasive. The frequency of contact and the duration of contact are critical to a determination of pervasiveness. The factual record reflects a significant number of text messages over a period of several months. That coupled with the daily contact during the swim season clearly demonstrates the unwelcome conduct was pervasive."

51. The fact finder further found the conduct was objectively offensive, stating: "The element of objectively offensive requires that the Decision Maker utilize the reasonable person standard. Under the facts in this particular circumstance the conduct was objectively offensive. The preponderance of evidence demonstrates that the Respondent was trying to foster an inappropriate relationship with the Complainant. Most reasonable observers, let alone a reasonable person in the Complainant's position (a teenage girl), would find the advances the Respondent made toward the Complainant offensive in nature. The age disparity and the fact that the Respondent was in a position of power over the Complainant only bolster the finding that the Respondent's conduct toward the Complainant was objectively offensive. The text messages described above and Complainant's description of messages sent in the Notes app clearly show that the Respondent had inappropriate feelings for the Complainant given his position as her swim coach. Respondent is 27 years of age and the Complainant is only 16. It is very reasonable that a student of that age and gender would be offended by both the thinly veiled romantic advances of a man almost twice her age. Respondent recognizes this when he says that he is a bad guy with the wrong motivations. It is also reasonable to believe that the Complainant, based on her age and the circumstance, would not have felt empowered to ask Respondent to stop the offensive conduct.

52. The fact finder found the conduct to be severe, stating: "The next

element that must be examined is the severity of the conduct. The severity of an incident is determined based on the nature and scope of the conduct as alleged as well as the impact of the respondent's conduct had on complainant. Respondent is 27 years of age and the Complainant is only 16. Respondent, though a third-party contractor, as Complainant's coach holds a position of authority over the Complainant. In such cases the level of severity is heightened and the conduct must be more closely scrutinized. In August of 2022, Respondent sent a text where he indicated that his messaging and gifts to Complainant would be viewed by outsiders as more than a friendship and that his behavior was "reportable." Respondent knew that he was acting inappropriately and in several separate texts he indicated that he was a "bad guy" with the wrong motivations. He reiterated the same during a dinner with Mireille Murillo in August of 2022 according to her testimony which I find to be credible. Judging the severity of the Respondent's conduct, including the two examples cited above, must be done through the lens of a reasonable person standing in the shoes of the Complainant. As the Respondent occupied a position of authority over the complainant, Complainant certainly was not able to simply avoid the contact unless she was willing to give up her swimming. She stated as much in her complaint when she noted that she was scared to come forward and make a complaint as the "divisions are right around the corner, and we need a coach to compete."

53. The fact finder when on to state: "Severity must also be examined in

11

light of the impact on the complainant. Based on the psychological report provided from the treating professional, Complainant has suffered significant trauma as a result of Respondent's conduct toward her. As documented, in the findings of fact, she has suffered from panic attacks, anxiety and depression all of which have caused her to miss education time in school and have adversely affected her grades. It is also noted that the Complainant has lost a considerable amount of weight and has difficulty sleeping.

### COUNT I: 42 U.S.C. § 1983 CIVIL RIGHTS CLAIM AGAINST DEFENDANT RILEY SHEA AND TITLE IX

54. Plaintiffs reincorporate each and every preceding paragraph as though more fully restated herein.

55. At all times relevant to this action, Defendant was a representative and apparent agent of the ABSD.

56. By the nature of his position as swim coach for the ABSD, Defendant was aware of all mandatory procedures for working in the ABSD.

57. At a time beginning no later than September 2022, as a part of the "grooming" process, Defendant began messaging A.M. DOE privately through multiple messaging platforms such as text and TeamSnap, among others.

58. Plaintiff, A.M. DOE's constitutional rights to personal security and bodily integrity were clearly established and well known to Defendant at the time of his sexual harassment and misconduct upon Plaintiff.

12

59. Defendant's actions deprived A.M. DOE of her right to personal security and bodily integrity, including her right to be free from sexual harassment at the hands of a public employee. Thus, Defendant violated A.M. DOE's clearly established civil rights under Title IX, violating 42 U.S.C. §1983.

60. As a result of Defendant's sexual harassment of A.M. DOE, she has suffered severe physical, psychological, and emotional injury and serious impairment to her academic and social development.

61. Plaintiff, A.M. DOE has suffered multiple traumas due to Defendant's behavior, and as a result, A.M. DOE's GPA dropped from a 4.0 to 2.0 in a matter of months during the 2022 school year.

WHEREFORE, Plaintiffs seek judgment of compensatory, punitive, and exemplary damages against Defendant in an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, along with costs, interest, and attorney's fees pursuant to 42 U.S.C. §1988 so wrongfully incurred.

### COUNT II: MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT CLAIM (MCL §37.2101) AGAINST DEFENDANT RILEY SHEA

62. Plaintiffs reincorporate each and every preceding paragraph as though more fully restated herein.

63. Plaintiff, A.M. DOE is, under Michigan law, including, without limitation, under the Elliot-Larsen Civil Rights Act (MCL §37.2101, *et seq.*), a person protected from acts of abuse and discrimination by those who have supervisory control

over her.

64. At all times relevant hereto, Defendant did, in fact, have supervisory control and corresponding obligations to A.M. DOE as a swim coach.

65. At all times relevant hereto, Defendant knew such conduct was illegal and improper.

66. Defendant's conduct occurred during the scope and course of his employment with EduStaff and assigned to the ABSD.

66. Defendant's conduct was and is a proximate cause of A.M. DOE's injuries, including her emotional and psychological injuries and the permanent and severe impairment of A.M. DOE's academic and social development.

WHEREFORE, Plaintiffs seek judgment of compensatory, punitive and exemplary damages against Defendant in an amount in excess of Seventy-Five Thousand and no/100 ($75,000) Dollars, along with costs, interest and attorney's fees so wrongfully incurred.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST DEFENDANT RILEY SHEA

67. Plaintiffs reincorporate each and every preceding paragraph as though more fully restated herein.

68. Defendant's conduct, as set forth above, was intentional, extreme, outrageous, and of such character as to be intolerable in a civilized society.

69. Defendant's conduct was for an ulterior motive or purpose including, but

not limited to, causing A.M. DOE severe emotional distress.

70. Defendant's conduct resulted in severe emotional distress to A.M. DOE.

        SEIKALY & ZEMAN, P.C.

        By: /s/ *William R. Seikaly*
        WILLIAM R. SEIKALY (P33165)
        Attorney for Plaintiffs
        38500 Woodward Avenue
        Suite 350
        Bloomfield Hills, MI 48304
        (248) 785-0102

## DEMAND FOR TRIAL BY JURY

NOW COME Plaintiffs, A.M. DOE, by Next Friend K.M. DOE, by and through their attorneys, SEIKALY & ZEMAN, P.C., and hereby demand a trial by jury in the above-entitled cause of action.

        SEIKALY & ZEMAN, P.C.

        By: /s/ *William R. Seikaly*
        WILLIAM R. SEIKALY (P33165)
        Attorney for Plaintiffs
        38500 Woodward Avenue
        Suite 350
        Bloomfield Hills, MI 48304
        (248) 785-0102

Dated: November 2, 2023